## CROWELL v. WOODBURY.

Upon a petition, under chapter 228, Gen. Stats., for partition of a saw-mill and water privilege with the appurtenances, partition cannot be made by assigning to each of the joint owners the exclusive occupation and enjoyment of the whole premises for alternate periods of time, according to their respective rights.

PETITION for partition, under chapter 228, Gen. Stats. The report of the committee was as follows:

"The committee, appointed by said court to make partition of the real estate described in the original petition,—the same being known as the Woodbury & Clement saw-mill and privilege, in Salem,—report: That they set off to said William G. Crowell the said saw-mill, with the appurtenances thereto belonging, to have and to hold the same for and during the first fifteen days of each month in each and every year which is divisible by two leaving no remainder; and, also, to have and to hold the same during all the days in each and every month in each and every year which is not so divisible by two, excepting the first fifteen days in each and every month of said years not divisible by two without a remainder, as and for his just share in said premises." The defendant objected to the acceptance of the report, and moved that the same be set aside and rejected, "because said committee, in and by said report, have not set off and assigned to the petitioner, by metes and bounds or other distinct description, his share of the premises of which partition was prayed."

*Bartlett*, for the plaintiff.

*Marston*, for the defendant.

LADD, J. In support of the report in this case, the petitioner relies upon a *dictum* in *Morrill* v. *Morrill*, 5 N. H. 134. That was a petition under the statute for partition of certain real estate, called the saw-mill privilege, at Crowley's Falls, bounded, &c. The committee made a return of partition, assigning to one of the petitioners "a tract of

land, bounded, &c., together with the right and privilege of taking and drawing from Exeter river so much water as will flow through a gate eighteen inches long and sixteen inches high," &c. ; and to the other, a tract of land, &c., together with a right to take the same quantity of water in the same way, leaving the balance of the land and the balance of the water-privilege to the defendant. The court held that the report was well enough on its face, and that judgment should be entered accordingly, unless it were shown to be very injurious to the property.

In the course of a short *per curiam* opinion, the court say,—" When the estate cannot be divided into several parts and a distinct part assigned to each owner, it is to be divided by assigning to one the use of it one week, and to another the use of it another week," &c.

This case was decided in 1830, and the proceeding was under the statute of 1810, or that of 1829, the two being alike in all respects material here.   Laws of 1815, p. 223 ; Laws of 1830, p. 459.   Both confer upon the court power to cause partition to be made, upon application, and the share or shares of the person or persons making the application to be set off from the rest, by a committee, &c.; and both are silent as to what shall be done in case the premises are not partible, or in case they cannot be divided without great injury.

Prior to 1810, the probate court had exclusive jurisdiction of the matter of partition.   The act of February 4, 1789 (Laws of 1792, p. 236), which relates wholly to partition by the judge of probate, contained a provision, that, when the premises could not be subdivided without great prejudice or inconvenience, the whole might be assigned to one of the parties, he paying, or giving bond to pay, such sum as the committee should award to the others.   But it was not until the revision of the statutes, in 1842, that this provision was incorporated into the act conferring jurisdiction in matters of partition upon the superior court of judicature.   Sec. 25, ch. 228, Gen. Stats., is identical in effect with this clause of the act of 1789, being now made applicable to proceedings in this court; and it is, perhaps, a little remarkable that no provision has ever been made for the very possible contingency, that the party to whom the whole land is assigned may not be willing to take the property and pay the price awarded by the committee.   Such a contingency was foreseen and provided against in a colonial statute passed during the administration of Lieutenant-Governor Usher, as early as 1693 (3 Prov. Pap. 197, 14);—and see Co. Litt. 165 *a*, and the statutes of many of our States collected in 1 Washb. R. P. 561, note.

But whether this statute furnishes the means of making legal partition of premises that cannot be divided without great prejudice or inconvenience, when neither of the joint owners is willing to take the whole and pay to the others the price awarded by the committee, it is not now material to inquire.   .It is enough that in 1830, when *Morrill* v. *Morrill* was decided, even this means of escape from the difficulty presented by a case where two joint owners of a thing not partible apply to have their shares therein set off to them in severalty, was not

furnished to the court; and to increase the embarrassment of the situation, there was no court in the State at that time clothed with equity powers.

In this condition of the law, a case like *Morrill* v. *Morrill*, which called for the division of a water-power, naturally suggested the inquiry, What could be done were the thing absolutely indivisible, like a villein, a corody uncertain, and the other examples given by Lord COKE ? Co. Litt. 164, *b*, 165, *a*.

The court fully recognized the doctrine that partition is a matter of right, and the existence of such a right implied the existence of some legal means whereby to give it effect. Under these circumstances, a special partition, which should direct the alternate enjoyment of the common property by the common owners according to their respective interests, was suggested as the way out of a dilemna which, although not then forced upon them, the court could not fail to see was liable at any time to arise.

That such a mode of making partition has been understood to be authorized by the early practice of the common law is doubtless true. Co. Litt. 164 *b*, 165 *a*, *et seq.*; SHAW, C. J., in *Adam* v. *Iron Co.*, 7 Cush. 366; ROYCE, J., in *Conant* v. *Smith*, 1 Aik. (Vt.) 67. How far such a practice ever prevailed, even before the old writ *de partitione facienda* had become obsolete, and before courts of equity assumed jurisdiction in the matter of partition, is not very clear. Without making any particular examination for that purpose, I have not met with any case, where the proceeding was by the common law writ of partition, in which such a course seems to have been taken.

But no such special partition was even attempted in *Morrill* v. *Morrill*, and the question was in no way directly before the court for determination. The remark, therefore, in that case, upon which the petitioner here relies, was at best purely a *dictum*, doubtless suggested by the somewhat anomalous condition of the law and the limited powers of the court at that time.

Long before any court having general chancery powers was established in this State, the concurrent jurisdiction of equity in making partition of land held in common by coparceners and tenants in common had become perfectly established — Hargrave's note to Co. Litt. 169 *a;* Story's Eq., sec. 646, *et seq.;* and there can be no doubt but that this branch of equity jurisdiction was fully conferred upon the court, with other equity powers, by the act of 1832. *Whitten* v. *Whitten*, 36 N. H. 326.

Since the decision of *Morrill* v. *Morrill*, two observable changes have been made in the statute relating to partition by the court: first, the provision found in sec. 25, ch. 228, Gen. Stats., already referred to; second, the clause in sec. 13 of the same chapter, directing the mode in which the shares shall be set off by the committee, has been made somewhat more explicit by adding the words, " by proper metes and bounds or other distinct description." These changes may not have a very important bearing upon the question before us; but we think

that, taken in connection with the fact that a court of chancery has in the meantime been established, they sufficiently indicate the intention of the legislature to cover the whole ground, and provide, in one way or the other, for all cases that may arise, without reviving and calling in the aid of an obsolete device or practice of the common law. Besides, if it had been the intention to renew or reäffirm the existence of such a mode of making partition, it seems extremely probable that it would have formed the subject of an express enactment, as was the case in Massachusetts.

Upon the whole, we think a fair interpretation of the intention of the legislature, as gathered from all the statutes now in force bearing on this subject, is, that those cases, if there be any, for which no sufficient remedy is furnished by petition under chapter 228 of the Gen. Stats., are intended to be left, and are left, to the more flexible and more appropriate remedies of equity.

The question then is, Does the statute authorize the mode of division adopted by the committee in this case ? and that depends upon the construction to be given to section 13 of chapter 228, already referred to.

The material part of that section is, " Said committee, before the hearing, shall be sworn faithfully and impartially to discharge the duties of this commission, and shall make partition of the estate as is therein directed, by setting off to each petitioner his just share thereof, according to his right, by proper metes and bounds or other distinct description."

Is the assignment to A of the exclusive use and occupation of a saw-mill for one half of each month, with no right to enter or control it the residue of the time, a setting off to him of his just share thereof, by proper metes and bounds or other distinct description ?   We think not.   If we look at the popular and received import of the words, a share of a thing generally means part of the thing itself, rather than the right to possess and use the whole thing a part of the time.   Perhaps the number of days in each week, or month, or year, that a person is to have the exclusive occupation of a piece of land, may, in some sense, be called a distinct description of his share of it.   But such, we think, is not the fair and obvious meaning of the words. The " other distinct description " spoken of we think means a distinct description of a share, that is, an integral portion of the thing separated from other parts of the same thing—a distinct piece of land, part of a house, or, as in *Morrill* v. *Morrill*, part of a water-power.   The idea of time of enjoyment of the whole, as an element of distinct description of its parts, certainly does not arise from the natural import and collocation of the words ; and we think it would be a stretch for the court to put upon them an interpretation so much at variance with the obvious sense in which they are used.

Further, I think the subject-matter of the statute furnishes an argument against the construction contended for.   The intention of the legislature is quite plain throughout to furnish a means whereby each

owner may be enabled to possess and enjoy his part of the common property in severalty. The proceeding by petition under the statute is in substance and effect a proceeding at law. The judgment on the report is a judgment at law, which creates and distributes the titles to the several shares among the several owners. Unlike a decree in equity, this judgment must be final, and fix, once for all, the situation of the parties with respect to each other and the estate.

We cannot fail to see that a mixed and intermittent occupation, such as would follow a judgment on a report like this, might be attended with a degree of vexation and annoyance to one or all the parties interested that would make their shares of comparatively little value, while, at the same time, it is not hard to conceive cases where the proceeding might be used for purposes of oppression and injustice, unless properly guarded by other statutory provisions.

We think such a legislative intent should not be left to inference, and that, even if the language were more doubtful than it is, we should not be justified in holding that a partition like that made by the committee here is authorized by the statute. This, of course, does not prevent any voluntary division of real estate owned by several persons in common, which the parties interested may think desirable.

*Report recommitted.*