Cheshire,
May 4, 1943. } No. 3410.

## PAUL L. DION *v.* CHESHIRE MILLS.

*Walter H. Gentsch, Robert W. Upton* and *John H. Sanders (Mr. Upton* orally), for the plaintiff.

*Philip H. Faulkner* and *Gardner C. Turner (Mr. Turner* orally), for the defendant.

PAGE, J. The question whether the issues should be consolidated was for the court, and no reason appears why his decision in that respect should be overruled. *Genest* v. *Company*, 75 N. H. 365. The question was raised at the hearing on the motion whether the effect of the rulings made would not be to deprive the plaintiff of his constitutional right to trial by jury, and that question is before us.

Some confusion has arisen because of the fact that both law and equity take jurisdiction over issues of fraud. The plaintiff referred in argument to the phrase used by counsel in *Hoitt* v. *Holcomb*, 23 N. H. 535, 544, "concurrent jurisdiction." If by that phrase it be understood, as held by that case, that fraud may be a defence at law as well as in equity, the phrase is harmless. Upon the authority of that case it is also clear that fraud is a defence to an unsealed instrument as well as to a bond, and the instrument now involved may be supposed to be unsealed. It is also true, as pointed out in argument, that insanity is a defence to a proceeding on a contract, whether the proceeding be at law or in equity. *Burke* v. *Allen*, 29 N. H. 106, 114. It has also been held that where a defence is well pleaded in law, it is improper for the party so pleading to begin proceedings in equity to try out the issue already properly joined at law. *Sullivan &c. Company* v. *Stowell*, 80 N. H. 158. Such a party cannot have relief in equity if he can obtain it at law. *Miller* v. *Scammon*, 52 N. H. 609.

Yet to speak of equity and law having concurrent jurisdiction over fraud may be quite misleading. In connection with defences grounded on fraud, its use may be precise enough. Usually, as applied to defences, the two jurisdictions are concurrent. The real test of the question of jurisdiction is the capacity in which the court acts upon an issue. Since our courts act both at law and in equity, there is room for confusion in this regard, unless there be careful consideration of the nature of the relief sought. The nature of the relief is the key to the jurisdiction.

It does not help to declare the substantive law that fraud vitiates a contract. That substantive law is identical in both law and equity, but the jurisdictional question is not thereby answered. It is clear enough that where the execution of a release is denied by the plaintiff, a court of law has jurisdiction. But where the execution of an instrument is admitted, but sought to be avoided for fraud, it is equally clear that the vitiating of the contract, except as a matter of defence to an action on it, belongs to equity. It is not enough to say that fraud vitiates a contract at both law and equity. That is true, but it does not follow, as has too often and too easily been concluded, that in all situations the jurisdictions are concurrent.

Relief sought from a contract or an instrument induced by fraud will belong to equity or to law in accordance with its nature. If a plaintiff has been deprived of money or chattels by a contract fraudulently procured, he may rescind the contract and recover in an

action at law his money or his chattels; or he may bring an action of deceit at common law and recover money damages. But if he wishes the cancellation of the instrument and restoration to his original position, or if he desires to have the instrument reformed, he has no remedy at law and must proceed in equity. Pomeroy, Equity Jurisprudence (5th *ed.*), *s.* 872. The rule thus announced is the rule concerning fraud, just as it was declared in *McIsaac* v. *McMurray*, 77 N. H. 466, to be the rule concerning instruments made under a mutual mistake of fact. The distinction proposed by the plaintiff's counsel, both in the trial court and here, does not exist.

With these principles in mind, confusion may be avoided. The plaintiff has sued the defendant for damages at law. The defendant has pleaded an election by the plaintiff which is a complete bar on its face to the prosecution of the plaintiff's action. The plaintiff has filed a "replication" asserting that he executed a written election which is invalid because obtained by the defendant's fraud. Though called by a common-law name his "replication" is in substance something else. It is not a defence, legal or equitable, to an action brought by the defendant. The plaintiff does not seek defensive relief at all; he is seeking affirmative relief by way of cancellation, which he cannot have at law, and may have only in equity. Until the instrument is cancelled, he has no right at law. The law leaves him where his signature left him, without any affirmative relief except in equity. We are dealing with no defence, but with an affirmative claim that is preliminary to such legal rights as the plaintiff may have.

The rulings below did not deprive the plaintiff of the right to trial by jury of legal issues, as was the case in *Baird* v. *Company*, 39 Cal. App. 512, cited by the plaintiff. In *King* v. *Company*, 156 Minn. 494, also cited by the plaintiff, the ruling sought by the defendant would have had that effect. The ruling below did not involve a failure to recognize fraud as a legal defence as was the case in *Greenberg* v. *Company*, 283 N. Y. S. 619, or so-called equitable estoppel as a defence at law, which was the case in *Watkins* v. *Company*, 9 Wash. (2d) 703. There was no refusal of the constitutional right to have issues at law decided by a jury.

For many years it has been well settled here that in equity there is no constitutional right to trial by jury. That question needs no examination anew except for the fact that our older cases have in some degree misconceived our equity practice prior to the Revolution. In the end the misconceptions have resulted in no serious

error, but it may be well enough to dispel some that have come to light during research into colonial practice. For example, it is not true, as suggested in *Wells* v. *Pierce*, 27 N. H. 503, 512, that during the years of our jurisdictional union with Massachusetts, 1641–1679, the General Court of that Commonwealth had original chancery jurisdiction to the exclusion of our inferior courts of law.

During that union a statute made a clear provision in connection with the subject of trial by jury that "if there be matter of apparent equity, as the forfeiture of an obligation, breach of Covenant without damage, or the like, the Bench shall determine such matters of equity." Colonial Laws of Massachusetts, 1660 (1889 *ed.*), 167.

The practice without jury is clear. *Cutt* v. *Rawlins*, 2 Province Deeds, 185 (County Court, 1672); *Petition of David Cambell*, 1 Court Papers, 633; *Leavitt* v. *Dearing*, 2 Court Papers, 343 (Court of Associates, 1673). The practice in equity without jury continued after New Hampshire became a royal province, whether under the Cutt Commission (*Scammon* v. *Jones*, 5 Court Papers, 335), or under Cranfield (*Martin* v. *Waldron*, 8 Court Papers, 51; *Barefoot* v. *Wadley*, 1 Province Papers, 469), or under Governor Allen (*Young* v. *Gilman*, 10 Court Papers, 93, 94).

There is no foundation for the supposition in *Wells* v. *Pierce*, 27 N. H. 503, 512, that the judiciary act of 1692 remained law and that the Governor and Council were a court of chancery of original jurisdiction (they were a court of appeals) until the Revolution. It is true that the provision for a court of chancery was not expressly repealed, but the judiciary act of 1699 (1 Laws N. H. 660) impliedly, though not expressly, repealed the provisions of the act of 1692 for all common-law courts. The act of 1699 contained no provision at all for a chancery court. Instead of that it revested in the common-law civil courts a chancery jurisdiction similar to that practiced during the union with Massachusetts, when there were no separate equity courts. That jurisdiction was somewhat enlarged in 1743. 2 Laws N. H. 725. The acts of 1699 and 1743 are found in all appropriate compilations after they were passed prior to 1792, but the provision of 1692 for a separate court of chancery is never found. For almost a century the act of 1699 was construed as having repealed the act of 1692. No contrary suggestion was made until two generations after the colonial period.

Frequently during the period from 1699, the common-law courts exercised chancery jurisdiction, just as they had done from 1641 to 1679. Two typical cases will suffice. In 1760, *Libbey* v. *Waldron*

came up in the Superior Court on a writ of review. It was an action on a bond for 500 pounds. The jury returned a verdict of forfeiture, which at common law would mean a judgment for 500 pounds unless the court gave affirmative relief in equity. The court chancered the bond and gave judgment for slightly more than one-tenth of the penal sum. Superior Court Judgments, D, 66. The other case, *Cunningham* v. *Holland,* in 1766, involved a bond for 200 pounds. According to the record "the Court are of opinion, that there is due" 131 pounds 15 shillings. They added an order for further affirmative relief by the release of a mortgage given to secure the bond. Superior Court Judgments, E, 381. Never is there a suggestion that an equitable issue was submitted to a jury. Just as during the seventeenth century, denial of trial by jury in equity was the rule during all the subsequent colonial period. Such issues as were submitted to the jury after the adoption of the Constitution were either framed in the discretion of the court for the enlightenment of the judges' consciences or under such a total misapprehension of colonial practice as once misled this court (*Marston* v. *Brackett,* 9 N. H. 336, 349) into saying that the practice in equity prior to the Constitution gave parties the right to trial by jury. Such use of the jury in the words of the Constitution (Bill of Rights, Art. 20) was "heretofore otherwise used and practiced."

The unsupported supposition in *Marston* v. *Brackett* was seriously doubted, upon better information of our legal history, but with still too little knowledge of it, in *Wells* v. *Pierce, supra,* and *Copp* v. *Henniker,* 55 N. H. 179, 211. The latter case was understood, without consideration and perhaps erroneously, to have overruled the *Marston* case. *Bellows* v. *Bellows,* 58 N. H. 60; *Proctor* v. *Green,* 59 N. H. 350, 351. The result was supported by a construction of the supposedly unrepealed act of 1692 in *State* v. *Saunders,* 66 N. H. 39. In spite of misconceptions, the result was correct.

. The truth is that during our pre-constitutional period there is no trace of trial by jury of equitable issues, but every evidence that it was always denied, and that except for the brief period 1682 to 1699 we never had separate courts of chancery. At all other colonial periods, equity practice was in the common-law courts, as now, and even when there was a court of chancery, the common-law Court of Common Pleas undertook in one instance to exercise equity jurisdiction. *Barefoot* v. *Wadley, supra.*

*Exceptions overruled.*

ALLEN, C. J. and MARBLE, J., dissented: the others concurred.

ON MOTION FOR REHEARING. After the foregoing opinion was filed the plaintiff moved for a rehearing.

*Robert W. Upton*, by brief, for the motion.

PAGE, J. Besides the claim of fraud in obtaining the release, the plaintiff's replication pleads that "the plaintiff was mentally and physically incapable of executing the alleged election with understanding." If this claim be substantiated, the election and release never had any reality at all, since there was no meeting of minds.

The issue thus raised, being an issue as to the existence of a release and not one relating to equitable relief from an existent release, is for the jury.

The order of procedure is for the trial justice to determine in the exercise of a sound discretion. If on the equitable issue of relief from fraud, he makes a decree in favor of the plaintiff, the next step will be a trial by jury of the action at law on the merits. If he decides the equitable issue in favor of the defendant, he will still in discretion have to determine whether undue prejudice will result from submitting to the jury at a single hearing the issue of incompetency and the issues on the merits. In other respects the former result is affirmed.

*Motion denied.*

ALLEN, C. J., and MARBLE, J., dissented, except in respect to a jury trial of the issue of incompetency; the others concurred.