Thomas H. DUFFY

v.

Loretta MACIAG et al.

No. 79–114–Appeal.

Supreme Court of Rhode Island.

July 8, 1981.

**1234**

Felix A. Appolonia, West Warwick, Frederick A. Costello, Warwick, for plaintiff.

G. John Gazerro, Jr., West Warwick, for defendants.

## OPINION

WEISBERGER, Justice.

The plaintiff, Thomas H. Duffy, commenced two separate actions in Kent County Superior Court to compel partition of a parcel of real estate located in West Warwick, Rhode Island. The separate actions were consolidated and the trial justice dismissed them on the defendants' motion[1] that plaintiff lacked standing to compel partition. On appeal, the plaintiff challenges the decision of the trial justice. We affirm. The pertinent facts follow.

On April 15, 1975, defendant Aldea Reposa (Aldea) conveyed, by warranty deed, her tract of land in West Warwick to plaintiff Duffy and the remaining defendants. The deed purported to grant an undivided one-third interest to defendant Loretta Macaig, an undivided one-third interest to defendants Wilfred and Alice Rapozo, and an undivided one-third interest to plaintiff and his wife, defendant Gloria Duffy. On May 1, 1975, all the aforementioned grantees conveyed to Aldea, the original grantor, a life estate in the same property. Thus, upon this conveyance, defendant Aldea held a life estate and plaintiff and all remaining defendants, as grantors of the May 1 conveyance, held a reversionary interest in fee.

In 1978 plaintiff commenced separate partition actions in Kent County Superior Court.[2] The plaintiff claimed the right to compel partition under G.L.1956 (1969 Reenactment) chapter 15 of title 34. These actions were consolidated by agreement of the parties. The defendants made a motion to dismiss, arguing that under Rhode Island law, one not seised of a possessory interest lacks standing to compel partition. The trial justice granted defendants' motion and dismissed the action, and plaintiff appealed.

Although the remedy may be of ancient derivation,[3] partition in the modern sense has its origin in the English common law. The remedy was a physical one: "[T]he sheriff with a jury of twelve went upon the

---

1. The defendants in Kent County No. 78–589 were Loretta Maciag, Wilfred Rapozo, Alice Rapozo, and Gloria Duffy. The defendant in Kent County No. 78–691 was Aldea Reposa, also known as Aldea Rapozo.

2. The plaintiff and his wife were divorced shortly before commencement of these proceedings.

3. Loyd, *Partition*, 67 U.Pa.L.Rev. 162, 163–64 (1919) (suggesting Roman origins of partition); *see* 2 Story, *Equity Jurisprudence* § 872 at 249–51 (14th ed. Lyon 1918) (partition in equity has ancient origins).

land, made a division of it and allotted the shares or purparts to the heirs respectively." Loyd, *Partition*, 67 U.Pa.L.Rev. 162, 167 (1919). The absolutely physical nature of the remedy could produce Draconian results.[4] Not until modern times did partition by sale become common.[5]

Voluntary partition—in which all cotenants agree—derives from the inherent right of co-owners to alienate their interest in land. 2 *American Law of Property* § 6.19 at 86 (Casner ed. 1952). Conversely, statutes permitting individual cotenants to compel partition came into existence to relieve the "mischief attending the ownership of estates in cotenancy * * *." Freeman, *Cotenancy and Partition* § 440 at 582 (2d ed. 1886). Disagreement and conflict among co-owners could result in virtual stagnation, to the detriment of the individual tenants and contrary to a developing society's interest in the constructive use of property.

> "No one of the cotenants could use or cultivate any specified part of the common lands to the exclusion of his fellow-tenants; and hence neither cotenant had the incentive to improve or even to cultivate the lands of the cotenancy * * *." *Id.*

This "mischief" did not occur when the individual seeking partition held an interest that was nonpossessory.[6] "[P]ersons having estates in land under which they had no right to possession, were in no respect inconvenienced or damnified by the undivided possession held by others." *Id.* at 582–83; *see Stanton v. Sullivan*, 63 R.I. 216, 222, 7

A.2d 696, 699 (1939). Similarly, the public interest in productive use of the lands would be in no way served by partitioning a nonpossessory interest. Under the early English statutes, therefore, the holder of a reversionary or remainder interest had no right to compel partition so long as the life tenancy continued. This rule was applied because "a prior life tenant has a freehold estate and is himself seised of the property. Thus, cotenants in remainder after a life estate have no seisin and therefore cannot maintain partition under the statutes of Henry VIII and the modern statutes * *." 2 *American Law of Property* § 6.23 at 102 (Casner ed. 1952); *see* Freeman, *supra*, § 446 at 593, 2 Story, *Equity Jurisprudence* § 884 at 261 (14th ed. Lyon 1918).

The traditional requirement of an estate in possession is fairly common among current statutes as a prerequisite to compulsory partition. *See, e. g.,* Me.Rev.Stat.Ann. tit. 14, §§ 6501, 6502 (West 1964) (petitioner must be seised or have right of entry); Mass.Gen.Laws Ann. ch. 241, § 1 (West 1959) (must have "present" estate); N.H. Rev.Stat.Ann. § 538:1 (1974) (must have or hold real estate to compel partition); Vt. Stat.Ann. tit. 12 § 5161 (1973) (person must have or hold to compel); *see also Putnam v. Davis*, 103 N.H. 121, 124, 166 A.2d 469, 472 (1960); *Fisher v. Peden*, 179 Neb. 150, 151–52, 137 N.W.2d 349, 350 (1965); *De Mik v. Cargill*, 485 P.2d 229, 234 (Okl.1971).

In the instant case, it is abundantly clear that these traditional concepts of partition

---

4. "'A hall is sometimes divided into two or more parts, and sometimes a chamber is divided from the hall.'" Loyd, *supra* at 167. As late as 1803, for example, the Lord Chancellor permitted a partition that had "allotted to the Plaintiff the whole stack of chimneys, all the fire-places, the only staircase in the house, and all the conveniences in the yard." *Turner v. Morgan*, 8 Ves.Jr. 143, 145 n.4(1) (1803). Exceptions might be made, however, in cases in which the property was such that it could not be divided—for example, a mill or mill stream. *Id.* at 144 n.4(a). With regard to dwelling houses, however, "the only sort of house, that cannot be the subject of [partition], * * * is a castle; being necessary for defence of the realm." *Id.* at 144.

5. Loyd, *supra* at 167; *see* 2 Story, *supra*, § 880 at 257.

6. The California Court of Appeal has noted that permitting nonpossessory plaintiffs to compel partition could give rise to a new type of "mischief":

> "A life estate with remainder over in real property frequently is created by will or deed and the obvious intent or desire of the creator is to provide haven and, in some instances, income to the life tenant for life without interference. That intent or desire would be destroyed were the remainderman allowed to force partition against the life tenant." *Akagi v. Ishioka*, 47 Cal.App.3d 426, 433, 120 Cal.Rptr. 807, 811 (1975).

would prevent plaintiff—the holder of a nonpossessory reversionary interest—from compelling partition. The plaintiff argues, however, that by enacting G.L.1956 (1969 Reenactment) § 34–15–20,[7] the Legislature conferred upon nonpossessory individuals the right to compel partition. Our analysis of this specific statute and our review of the general scheme of the partition laws convince us that plaintiff's assertion is erroneous. Section 34–15–20 reads in pertinent part:

"Partition may be made of any lands, tenements or hereditaments between the person or persons who hold the fee of any share or shares thereof, and the person or persons who hold or are or may be entitled to any share or shares thereof, for life or in reversion or remainder, and whether such remainder be vested or contingent, and whether it be to persons in being and ascertained or to persons not in being or to be ascertained thereafter, or subject to be opened to let in those afterwards to come into being or having other interests whatsoever, vested or contingent therein * * *."

The statute goes on to provide for representation and protection of parties that may somehow be interested in the partition, including, for example, persons not yet in being. *Aylesworth v. Crocker*, 21 R.I. 436, 439, 44 A. 308, 309 (1899).

The plaintiff is correct in his belief that this statute provides for partition among individuals such as himself and defendants. We believe, however, that the statute authorizes voluntary, not compulsory, partition. Rather than creating a new class of cotenants who may compel partition, the statute describes what type of interests may be partitioned.[8] This intention is evident not only from the wording of § 34–15–

20 itself ("Partition may be made * * *") but also from a comparison of this statute with other sections that obviously provide for compulsory partition. For example, § 34–15–3 provides for certain parties "actually seised or possessed" who "may compel or be compelled to make partition." Similarly, § 34–15–5 applies when the tenant in reversion or remainder *joins* with the life tenant "in compelling partition."

In *Stanton v. Sullivan*, 63 R.I. 216, 7 A.2d 696 (1939), this court considered an action brought by one of two life tenants, who joined with several contingent remaindermen in seeking to compel partition against the other life tenant and the rest of the contingent remaindermen. The court refused to permit compulsory partition under a predecessor of § 34–15–20, noting that there was "no case in this state in which this court has held that one not holding an absolute fee in possession could demand partition * * *." *Id.* at 221, 7 A.2d at 698.

We are not persuaded that the Legislature, by enacting § 34–15–20, intended to confer a right of compulsory partition upon a class of nonpossessory plaintiffs.[9] Thus, we believe that the trial justice was correct in concluding that the plaintiff lacked standing to compel partition.

For the foregoing reasons, the plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers may be remitted to the Superior Court.

---

7. General Laws 1956 (1969 Reenactment) § 34–15–20 was originally enacted by the Legislature in 1887. P.L.1887, ch. 662, § .1. Other than changes to reflect the merger of law and equity, the present statute is identical to the 1887 act. *See* § 34–15–20 Compiler's Note.

8. *See generally Putnam v. Davis*, 103 N.H. 121, 124, 166 A.2d 469, 471–72 (1960) (statute per-

mitting partition of nonpossessory estates does not give nonpossessory owner right to compel partition).

9. Section 34–15–20 would, of course, permit voluntary partition among the life tenant and all the reversioners.