Merrimack
No. 2008-391

TOWN OF CANAAN & a.

v.

SECRETARY OF STATE

Argued: October 8, 2008
Opinion Issued: October 29, 2008

*New Hampshire Legal Rights Foundation*, of Mont Vernon (*William L. O'Brien* on the brief and orally), for the petitioners.

*Kelly A. Ayotte*, attorney general (*James W. Kennedy*, assistant attorney general, on the memorandum of law and orally), for the respondent.

HICKS, J. The petitioners, who are various towns, legislators, candidates, voters and public officials, appeal an order of the Superior Court (*Conboy*, J.) denying their request to declare that the New Hampshire House of Representatives' current apportionment of districts is unconstitutional and to enjoin the 2008 primary and general elections. We affirm.

The record supports the following relevant facts. New Hampshire's legislative districts were twice reapportioned since the federal decennial census in 2000. This court reapportioned first in 2002. *See Below v. Secretary of State*, 148 N.H. 1, 3 (2002); *Burling v. Speaker of the House*, 148 N.H. 143, 144 (2002). The legislature enacted the second in 2004, amending the 2002 plan. *See Petition of Below*, 151 N.H. 135, 137 (2004) (*Below II*). The instant action seeks a third redistricting.

In *Below* and *Burling*, we undertook, albeit reluctantly, redistricting for New Hampshire's Senate and House of Representatives following the legislature's failure to discharge its constitutional duty to do so based upon the 2000 census. *See Below*, 148 N.H. at 4 (failure to override veto of Senate Bill 1 regarding senate redistricting); *Burling*, 148 N.H. at 145 (failure to override veto of House Bill 420 regarding house redistricting). In order to bring the reapportionment schemes into constitutional compliance, we developed legislative districts guided by the "one person/one vote" standard. *Below*, 148 N.H. at 5-9; *Burling*, 148 N.H. at 146-50. We did so based upon the 2000 census because the sole constitutional "yardstick [was] the last general census of the inhabitants of the state taken by authority of the United States or of this state." *Below*, 148 N.H. at 10 (quotation omitted); *see also Burling*, 148 N.H. at 152.

In *Below II*, we upheld reapportionment legislation enacted subsequent to the court-ordered 2002 plan because "the [legislature's] duty and the power to act under [Part II, Articles 9, 11 and 26] continue until the power is exercised and discharged," *Below II*, 151 N.H. at 148 (quotation and ellipsis omitted), given "the purpose and intent of requiring decennial reapportionment . . . to ensure substantially equal representation based upon population," *id.* at 147. Nevertheless, we cautioned that the legislature lacked absolute discretion to delay post-census redistricting. Taken to the extreme, the legislature could "redistrict nine years after one federal decennial census . . . [and] again in only one or two years following the next census [which] would impair the need for stability and continuity in . . . the legislative system." *Id.* at 148 (quotation omitted).

The legislation reviewed in *Below II* was a permissible exercise of constitutional reapportionment authority, however, because the legislature began considering the new scheme after our holdings in *Below* and *Burling* and prior to the 2004 election. *Id.* at 149. Had it waited until the next session, we intimated that the legislature "might well have been precluded

from [enacting redistricting legislation] at a future session." *Id.* Finally, we held that "once the legislature has fulfilled its constitutional obligation to reapportion based upon the decennial census figures, it has no constitutional authority to make another apportionment until after the next federal census." *Id.* at 148.

Constitutional Amendment Concurrent Resolution 41 (CACR 41) was put to New Hampshire voters on November 7, 2006, following its adoption by the legislature. CACR 41 reintroduced "floterial" districts to the legislative landscape. As the voter guide explained:

> The Constitution does not guarantee that each town or ward having enough inhabitants to entitle it to one representative seat in the Legislature shall have its own district. The Constitution permits the Legislature to form multi-town and multi-ward districts for electing state representatives, but does not expressly permit or prohibit the Legislature to form so-called "floterial" or at-large districts using excess inhabitants from one district to create a representative seat in those towns and wards that do not have enough inhabitants to form a district.
>
> . . . .
>
> [If adopted, t]his amendment will allow the legislature to create districts in the same manner that districts were drawn prior to 2002. It will increase the total number of districts and therefore increase the probability that the people of a town will be represented by a member of their own community.
>
> Each town or ward having enough inhabitants to entitle it to one or more representative seats in the Legislature shall be guaranteed its own district for the purposes of electing one or more representatives, unless such action prevented a neighboring town from being included in a single-representative district before it is part of a floterial district. Where a town, ward or unincorporated place does not have enough inhabitants necessary for a representative seat, the Legislature shall form multi-town or multi-ward districts, to qualify for one or more representative seats. Excess population in one or more contiguous districts may be combined to allow for additional at-large or floterial representatives.

CACR 41 is likely a response to our decision in *Burling*, where we declined to employ "floterial" redistricting schemes within the 2002 court-ordered reapportionment. The voters adopted CACR 41 and, as a result, Part II, Article 11 of the State Constitution now reads:

When the population of any town or ward, according to the last federal census, is within a reasonable deviation from the ideal population for one or more representative seats the town or ward shall have its own district of one or more representative seats. The apportionment shall not deny any other town or ward membership in one non-floterial representative district. When any town, ward, or unincorporated place has fewer than the number of inhabitants necessary to entitle it to one representative, the legislature shall form those towns, wards, or unincorporated places into representative districts which contain a sufficient number of inhabitants to entitle each district so formed to one or more representatives for the entire district. In forming the districts, the boundaries of towns, wards, and unincorporated places shall be preserved and contiguous. The excess number of inhabitants of a district may be added to the excess number of inhabitants of other districts to form at-large or floterial districts conforming to acceptable deviations. The legislature shall form the representative districts at the regular session following every decennial federal census.

N.H. CONST. pt. II, art. 11.

On May 5, 2008, the petitioners filed this action seeking a declaration that RSA 662:5 (2008), the statute currently governing district apportionment for the New Hampshire House of Representatives, is unconstitutional because Part II, Article 11 as amended requires the legislature to redistrict the state's representative districts prior to the 2008 primary and general elections. The petitioners also sought to enjoin the 2008 elections. They contend that the passage of CACR 41 requires that the New Hampshire House of Representatives undergo immediate redistricting. The trial court denied the petitioners' requests for declaratory and injunctive relief.

In reaching its disposition, the trial court assumed that the statutory redistricting scheme within RSA 662:5 does not comply with the amended language of Part II, Article 11. It concluded, however, that Part II, Article 11 "plainly and unambiguously establish[es] that the mandated redistricting take place at the regular legislative session following the next [federal] decennial census."

The court noted that past constitutional amendments expressly provided for redistricting upon passage but that Part II, Article 11 does not. It also cited one legislator's post-adoption comments explaining that CACR 41 required no immediate reapportionment. Finally, the trial court reasoned that our decision in *Below II* supported its conclusion given that "[t]he

policy and practice in New Hampshire has been to create legislative districts once every ten years based upon the federal census." *Below II*, 151 N.H. at 145.

On appeal, the petitioners argue that by adopting the amendment to Part II, Article 11, voters expressed a clear intent to require immediate redistricting. They assert that the trial court's order results in a "complete denial [of] the [p]etitioners['] . . . fundamental rights of voting, representation and candidacy" and that these impingements require an immediate remedy.

In support of their argument, the petitioners maintain that the voter guide's failure to inform voters that the amendment would not be applied to existing districts upon adoption means that voters "would not have known or . . . assumed that their constitutional direction . . . was not effective when the amendment was adopted . . . but only . . . years later." They further contend that the trial court impermissibly read words into the final sentence of the amended language and unreasonably ascertained voter intent by considering the language of prior constitutional amendments and relying upon post-adoption legislative statements.

■ We review the trial court's construction of constitutional provisions *de novo* as "the final arbiter of State constitutional disputes." *Below II*, 151 N.H. at 139; *see also State v. MacElman*, 154 N.H. 304, 307 (2006). "To interpret the meaning of [a constitutional] provision, we examine its purpose and intent." *Opinion of the Justices (Voting Age In Primaries)*, 157 N.H. 265, 268 (2008). "In so doing, we will give the words in question the meaning they must be presumed to have had to the electorate when the vote was cast." *Id.* (quotation omitted). "The language used by the people in the great paramount law which controls the legislature as well as the people, is to be always understood and explained in that sense in which it was used at the time when the constitution and the laws were adopted." *Id.* (quotation omitted).

Contrary to the parties' assertions, we find nothing in the voter guide's explanation of CACR 41 that assists us in deciding the issue. Apart from the proposed new constitutional text, the voter guide is silent as to when the legislature would conduct the next reapportionment. Accordingly, we turn to the language of the constitutional text itself.

■ We are not persuaded that CACR 41 was intended to compel an immediate reapportionment following its adoption by voters. Rather, the petitioners' construction of Part II, Article 11 is belied by the provision's plain language. Article 11, as amended, is a clear mandate and a grant of authority, *see Below II*, 151 N.H. at 146-47, which requires the legislature to form "representative districts at the regular session following every

decennial federal census." N.H. CONST. pt. II, art. 11. The plain meaning requires reapportionment each decade at the regular session following the federal census. *See id.; cf. Below II*, 151 N.H. at 146. Immediate reapportionment is therefore unnecessary because the next federal decennial census will not be conducted until 2010. *See* 13 U.S.C. § 141(a) (2000).

■ We reject the contention that our construction "violate[s] the essential right to vote freely for the candidate of one's choice." Decennial reapportionment is a "rational approach to readjustment of legislative representation," *Reynolds v. Sims*, 377 U.S. 533, 583 (1964), and "compliance with such an approach . . . clearly meet[s] the minimal requirements for maintaining a reasonably current scheme of legislative representation," *id.* at 583-84, while recognizing "the need for stability and continuity in the organization of the legislative system," *Below II*, 151 N.H. at 148 (quotation omitted).

Our review of *League of United Latin American Citizens v. Perry*, 548 U.S. 399 (2006), relied upon by the petitioners, reveals nothing instructive upon the issues presented. For the foregoing reasons, we affirm the order of the trial court.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.