Carroll,
Nov. 1, 1910.

### DALEY *v.* KENNETT.

The parties to an action of trover for the conversion of personalty are entitled to a trial by jury as a matter of right, although the questions to be determined are so involved and complicated that they cannot be clearly understood by the jury.

Where a mortgagee of personalty elects to treat a wrongful withholding of the property by a subsequent mortgagee in possession as a conversion and brings a suit for damages, he cannot thereafter treat the action at law as an equitable proceeding for an accounting, on the ground that the chattels are numerous and that a trial of the cause involves a consideration of conflicting incumbrances, when it appears that the only issues to be determined are those of title and value.

TROVER, for the conversion of a quantity of sawmill machinery, etc. Trial by the court and verdict for the plaintiff. The plaintiff holds two mortgages on the property, and the defendant holds a vendor's lien, a third mortgage (which does not mention the first and second), and a bill of sale from the mortgagor. There was no question of the due execution and record of the various incumbrances, nor of the amount due upon the demands secured thereby. Before bringing suit the plaintiff tendered the defendant the amount due upon the lien and demanded the property. The defendant refused to deliver it, claiming title under his mortgage and bill of sale. Subject to the defendant's exception, he was denied a jury trial. Transferred from the June term, 1910, of the superior court by *Plummer*, J.

*Leslie P. Snow* and *William R. Daley* (of Vermont), for the plaintiff.

*Walter D. H. Hill*, for the defendant.

PEASLEE, J.   The trial of this case involved a question of what property was covered by the descriptions in the plaintiff's mortgages, and a large number of items of damage.   It was taken from the jury and tried by the court, because the presiding justice found it was " so complicated and involved so many details that the jury could not clearly understand and comprehend it."   To this procedure the defendant excepted.   The finding of fact involved in the ruling is conclusive here.   *Low* v. *Society*, 67 N. H. 488 ; *Dole* v. *Pike*, 64 N. H. 22.   The question presented by the exception, therefore, is whether in a case like this the defendant can claim a jury trial as of right, even when the matters to be tried are so complicated and involved that they cannot be clearly understood by the jury.   The logical answer to this isolated inquiry is not necessarily the legal one.   The people having reserved to themselves the right of jury trial, except " in cases in which it has been heretofore otherwise used and practiced " (Bill of Rights, *art.* 20), the scope of the exception is shown " by common-law principles and by history."   *Wooster* v. *Plymouth*, 62 N. H. 193, 203.

What was the practice in cases of this class in 1784 ?   With some exceptions which do not bear upon the present controversy, the right to trial by jury in suits at law was absolute.   The books will be searched in vain for a precedent for taking a common-law action from the jury upon the ground that the particular case was beyond their comprehension.   And so the practice continued to be in England.   The situation is thus described as late as 1847.   " The facts of the case, as stated by my noble and learned friend on the woolsack, very clearly show that it would be a mere mockery to bring such an action before a jury.   What would be done if such an action were brought at *nisi prius ?*   I know that within five minutes from the opening of the case by the leading counsel for the plaintiff, the judge would say :   'If we sit here for a fortnight we cannot try this sort of a case, and therefore it is indispensably necessary for the sake of justice—not to save us from the trouble of trying the case, which we are perfectly willing to take —but for the sake of justice, that there should be a reference to an arbitrator, who will take the accounts between the parties.'   My lords, in ninety-nine cases out of one hundred that recommendation would at once be acceded to.   Sometimes there is a wrong-headed client who is fool enough to resist such a recommendation, and to whom, according to a well known saying that we have in West-

minster Hall, it is necessary to use 'strong language' to induce him to listen to the recommendation of my lord the judge." *Taff Vale Ry.* v. *Nixon*, 1 H. L. C. 111.   But if the obdurate litigant still persisted in his course, the judge could go no further.   " I may remind your lordships that the inadequacy of a jury to try such a case was felt so strongly by the common law commissioners appointed some years ago, that, to meet the case of an obstinate party who stood out against the recommendation of a reference, they recommended an act of parliament should be passed giving the judge power to force a reference; and such a bill was brought in, but it was opposed by high authority" and failed of enactment. *Ib.*   In this state of the law, and with the distinction between law and equity strictly and technically observed, it is manifestly useless to search for precedents in the common-law reports.   The power now invoked was unknown to the common law.

" But these courts [of law] possess no authority to stop the progress of such suits for the purpose of subjecting the matter in dispute to the investigation of a more convenient tribunal.   Unless the parties voluntarily adopt an arrangement for that purpose, the case proceeds to trial with a certainty in many instances that it will not be tried.   A reference is proposed by the judge and is recommended by the counsel; but the parties, having made expensive preparation for the trial, are unwilling to forego the right of an immediate decision, and as the judge has no power to force compliance with his proposal, the cause is suffered to go on till it becomes at length manifest that no satisfactory verdict can be given by the jury, and a consent to arbitration is extorted rather than given." Second Report to His Majesty by the Commissioners Appointed to Inquire into the Practice and Procedure of the Superior Courts of Law (1830), *p.* 26.

In equity, however, there was no jury trial as of right (*State* v. *Saunders*; 66 N. H. 39), and in matters involving accounts the jury trial was avoided by proceeding on the chancery side of the court. " It is not improbable that originally, in cases of account which might be cognizable at law, courts of equity interfered upon the special ground of accident, mistake, or fraud.   If so, the ground was very soon enlarged, and embraced mixed cases not governed by these matters.   The courts soon arrived at the conclusion that the true principle upon which they should entertain suits for an account in matters cognizable at law was, that either a court of law could not give any remedy at all, or not so complete a remedy as courts of equity.   And the moment this principle was adopted in its just extent, the concurrent jurisdiction became almost universal, and reached almost instantaneously its present boundaries." 1 Sto. Eq. Jur., *s.* 452 ; *Davis* v. *Dyer*, 62 N. H. 231.

This jurisdiction was limited to causes involving some sort of an account, as that term is popularly understood. It could be invoked only in cases founded on contracts, or implied trusts, or when a remedy at law was lacking. It may be that it could with consistency have been extended generally to cases arising *ex delicto*, but this was not done. While, as Judge Story suggests, it is " difficult to trace out a distinct line where the legal remedy ends and the equitable jurisdiction begins " (1 Sto. Eq. Jur., *s.* 460), it quite plainly appears that when there was an action for trover equity would not interfere unless there was some special ground of jurisdiction. Bac. Abr., Acompt. In 1745, a bill was brought against a former tenant for an accounting for timber cut from the freehold during the tenancy. Lord Chancellor *Hardwicke* said:   " This is the most extraordinary bill that ever was brought in this court, and I hope never to see one of the like nature again.   .   .   .   Waste is a loss for which there is a proper remedy by action ; in a court of law the party is not necessitated to bring an action of waste, but he may bring trover ; these are the remedies, and therefore there is no ground of equity to come into this court." *Jesus College* v. *Bloom*, Amb. 54. To the same effect are later English cases. *Pulteney* v. *Warren*, 6 Ves. Jr. 73, 89; *Gent* v. *Harrison*, 5 Jur. N. S. 1285 ; 1 Mad. Ch. Prac. (3d Eng. ed.) 119.

Historically, if not logically, there was ground for this distinction. When the cumbrous action of account came into use in courts of law, the mathematical features of the case went to an auditor, while the ordinary issues of fact were separated out and tried by jury. " The old mode of proceeding upon the writ of account shows it. The only judgment was that the party ' should account,' and then the account was taken by the auditor ; the court never went into it." *O'Connor* v. *Spaight*, 1 Sch. & Lef. 305 ; *Carlisle* v. *Wilson*, 13 Ves. Jr. 275. As accounts (in the technical sense) had never been tried by jury, there was no fundamental objection to the assumption of jurisdiction in equity.

This was the state of the law in 1784. At common law and in ordinary actions, the right to a jury trial was absolute. In equity there was jurisdiction in matters of accounts if it appeared that the case could not be intelligently tried by jury. But there was no such equitable jurisdiction in actions sounding in tort, where the sole complaint was that the defendant had converted chattels, and damages alone were asked as a remedy. Logical or illogical, this was the line of demarcation. This was the use and practice which the people made the constitutional measure of their rights. This measure is not varied by modern methods of procedure, wherein forms of action are treated as largely immaterial. Its application is not abolished by the rule that the same suit may be at once an

action at law and a bill in equity.   *Tasker* v. *Lord*, 64 N. H: 279.
" Constitutional construction   .   .   .   is not to be dealt with like
unimportant forms of procedure, or English rules of law that are
not adapted to the situation and circumstances of. this country.
On questions concerning the foundations of society, where a sys-
tem of government has lasted more than a century, the ancient
landmarks cannot be removed by judicial decisions." Unreported
opinion by *Doe*, C. J.   " The formal distinctions in the pleadings.
and modes of procedure are abolished; but the essential distinction
between law and equity is not changed.   The relief which the law
affords must still be administered through the intervention of a,
jury, unless a jury be waived." *Basey* v. *Gallagher*, 20 Wall. 670,
680; *State* v. *Saunders*, 66 N. H. 39, 77.   The fact that the pres-
ent suit is called an action in trover is not determinative of the
issue presented by the exception.   The nature of the case and of
the relief sought must be looked to for the settlement of the con-
stitutional question.

If this were in effect a suit for an accounting, the authorities
cited by the plaintiff would be applicable and his claim well
founded.   But it is not such a suit.   The vendor's lien held
by the defendant is not of importance in the litigation.   The
amount due upon it is unquestioned, and the defendant refused to
accept it because he denied the plaintiff's title to the property and
claimed to hold the same under conveyances other than the lien
memorandum.   The case is the ordinary one of the holder of a
chattel mortgage whose title is denied by one in possession under
subsequent conveyances.   With this case in hand, the plaintiff
chose his remedy.   If he might have proceeded in chancery for an
equitable adjustment of conflicting claims he did not do so, but
elected to treat the conduct of the defendant as a conversion and to
bring suit in trover.   Having sought to avail himself of this rem-
edy, he cannot complain of the consequences which follow.   The
law applicable to the case is the same as it would be if a single
chattel owned by the plaintiff had been converted by the defend-
ant.   There is nothing in the nature of an accounting involved in
this controversy.   The mere fact that the chattels are numerous
does not make such a case.   *Untermyer* v. *Beinhauer*, 105 N. Y.
521; *Johnson* v. *Railroad*, 139 N. Y. 449.   " Mere inconvenience
is not a reason for refusing a jury trial in cases where the right is
guaranteed by the constitution." *Davis* v. *Dyer*, 62 N. H. 231,
239.

The incumbrances are not interwoven.   There is no occasion to
marshal assets or make an equitable application of the proceeds of
the chattels.   The plaintiff's two mortgages are admittedly prior
to the defendant's mortgage and bill of sale.   The issue is not of

priority, but of title and value. In such a case the defendant is entitled to a jury trial. "In all actions for injury to property, the trial by jury included the assessment of the plaintiff's damages, when the verdict was for him. This we regard as an essential part of the trial by jury intended to be secured by the constitution." *East Kingston* v. *Towle*, 48 N. H. 57, 64.

The suit is not one to redeem or foreclose. The plaintiff seeks to defeat the defendant's mortgage by showing a superior title. There is no suggestion in the case that he desires to redeem. Nor does he seek a foreclosure of his own mortgage by this proceeding. His sole claim here is to recover damages for a wrongful withholding of the mortgaged chattels.

The plaintiff errs in his assumption that the claim he asserts is an equitable one. He stands upon a strict legal right. It is true that he demanded a delivery of the chattels in order that he might foreclose his mortgages upon them; but the demand, whether complied with or not, was no part of a foreclosure. He was entitled to the demanded possession, whether his purpose was at once to commence a foreclosure, or merely to hold the property. *Leach* v. *Kimball*, 34 N. H. 568. He had a right to the possession by virtue of the title he held. That right did not depend upon some action which he purposed to undertake after he obtained possession. Under these circumstances, the defendant was entitled to a trial by jury.

*Exception sustained.*

All concurred.