NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2018-0035


CURTIS S. RIDLON

v.

NEW HAMPSHIRE BUREAU OF SECURITIES REGULATION

Argued: October 24, 2018
Opinion Issued: July 24, 2019


Preti Flaherty, PLLP, of Concord (Brian M. Quirk and Nathan R. Fennessy on the brief, and Mr. Quirk orally), for the plaintiff.


Gordon J. MacDonald, attorney general (K. Allen Brooks, senior assistant attorney general, and Scott E. Sakowski, assistant attorney general, on the brief, and Mr. Brooks orally), for the defendant.


LYNN, C.J. In this appeal we are asked to determine whether Part I, Article 20 of the New Hampshire Constitution guarantees that a party subject to an administrative enforcement action undertaken by the defendant, the New Hampshire Bureau of Securities Regulation (Bureau), be afforded a jury trial. The Superior Court (McNamara, J.) answered the question in the affirmative. We disagree and therefore reverse.

The following relevant facts are derived from the record. The plaintiff, Curtis S. Ridlon, was formerly employed as an investment adviser. In April 2017, the Bureau brought an administrative enforcement action against Ridlon, alleging that he charged clients approximately $2.8 million in improper fees. The relief sought by the Bureau included civil penalties of up to $3,235,000, restitution in the amount of $1,343,427.20, and disgorgement of up to $1,513,711.09. See RSA 421-B:6-604(d)-(e) (2015) (amended 2018).[1] By agreement of the parties, Ridlon filed a declaratory judgment petition in the trial court asserting that he was constitutionally entitled to a jury trial and seeking to enjoin the administrative proceedings from continuing. In response, the Bureau filed a motion to dismiss. The trial court denied the Bureau's motion, ruling that Part I, Article 20 of the State Constitution affords Ridlon the right to a jury trial, and enjoining any further administrative proceedings by the Bureau. This appeal followed.

Ridlon argues that the trial court correctly ruled that he has a constitutional right to a jury trial because the Bureau seeks penalties in excess of $6 million and, in the alternative, because the action against him "amounts to an action for common law fraud." Because we are the final arbiter of the meaning of both statutes, Appeal of Laconia Patrolman Assoc., 164 N.H. 552, 555 (2013), and the State Constitution, Petition of Below, 151 N.H. 135, 139 (2004), we review the trial court's decision de novo, Linehan v. Rockingham County Comm'rs, 151 N.H. 276, 278 (2004).

Part I, Article 20 of the New Hampshire Constitution governs jury trials in civil cases. It provides:

> In all controversies concerning property, and in all suits between two or more persons except those in which another practice is and has been customary and except those in which the value in controversy does not exceed $1,500 and no title to real estate is involved, the parties have a right to a trial by jury. This method of procedure shall be held sacred, unless, in cases arising on the high seas and in cases relating to mariners' wages, the legislature shall think it necessary hereafter to alter it.

N.H. CONST. pt. I, art. 20. Although "[i]t is beyond dispute that the right to a jury trial is a fundamental one under our State Constitution in both the civil and the criminal contexts," State v. Morrill, 123 N.H. 707, 711 (1983), it is

---

[1] We note that RSA chapter 421-B was repealed and reenacted in 2015, during the course of Ridlon's alleged conduct. See Laws 2015, 273:1 (eff. Jan. 1, 2016). At least some of this conduct would arguably be governed by the previous iteration of the chapter. See RSA 421-B:7-701(a) (2015). Because the parties apply the 2016 version on appeal, for purposes of this appeal, we assume that the 2016 version of the chapter applies. See In the Matter of White & White, 170 N.H. 619, 621 (2018) (applying the current version of a statute where the trial court and the parties did same).

equally irrefutable that in civil cases the right is considerably more limited than it is in criminal cases, State v. Bilc, 158 N.H. 651, 653 (2009). Specifically, in civil cases the right "extends only to those cases for which the jury trial right existed when the constitution was adopted in 1784." Morrill, 123 N.H. at 712. As we have explained, "Part I, Article 20 did not create or establish a right to a jury trial not before existing." Hair Excitement v. L'Oreal U.S.A., 158 N.H. 363, 368 (2009) (quotation and brackets omitted). Rather, "[i]t was a recognition of an existing right, guaranteeing it as it then stood and was practiced, guarding it against repeal, infringement, or undue trammel by legislative action, but not extending it so as to include what had not before been within its benefits." Id. (quotation omitted).

"To resolve whether a party has a right to trial by jury in a particular action, we generally look to both the nature of the case and the relief sought, and ascertain whether the customary practice included a trial by jury before 1784." Id. (quotation omitted). "Partly as a result of this test, and at times independently thereof, it has been decided that a guaranty of trial by jury cannot be invoked in special, statutory or summary proceedings unknown to the common law." Hallahan v. Riley, 94 N.H. 338, 339-40 (1947); accord In re Sandra H., 150 N.H. 634, 636 (2004).

Relying on state and federal case law, the trial court concluded that the Bureau "cannot seek a fine of $2,500 for a violation of RSA 421-B without a jury determination of liability." At the outset of our analysis, we observe that, to the extent the trial court relied on federal precedent interpreting the Seventh Amendment to the United States Constitution, such reliance was misplaced. The jury trial guaranty enshrined in the Seventh Amendment is not among the federal rights that have been held to be encompassed within the Fourteenth Amendment's due process clause and thus binding in state court actions. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 432 (1996) (recognizing that the Seventh Amendment "governs proceedings in federal court, but not in state court"); Opinion of the Justices, 121 N.H. 480, 482-83 (1981) (noting that "the Seventh Amendment is one of the few remaining provisions in the Bill of Rights which has not been held to be applicable to the states through the Fourteenth Amendment" (quotation omitted)); see also 47 Am. Jur. 2d Jury § 5, at 630 (2006). More importantly, as the Bureau points out, the analysis we use in determining whether the jury trial right conferred by Part I, Article 20 applies in a given case differs from that employed by federal courts in making similar determinations under the Seventh Amendment. Compare, e.g., Tull v. United States, 481 U.S. 412, 420-21 (1987) (cautioning that the Seventh Amendment may require "trial by jury in actions unheard of at common law," and noting that "characterizing the relief sought is more important than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial" (quotation and brackets omitted)), with Franklin Lodge of Elks v. Marcoux, 149 N.H. 581, 592 (2003) (explaining that focusing solely upon the nature of damages "fails to address whether . . .

3

the right remedied in this case . . . was recognized at common law in 1784 and customarily resolved by jury trial," and "makes no effort to appraise the seemingly comprehensive nature of the" statutory scheme). In light of this divergence, and because neither party has asked us to eschew our traditional methodology in favor of the federal approach, we decline to give controlling weight to Seventh Amendment jurisprudence when determining whether Part I, Article 20 affords a state court litigant the right to a jury trial.

Moreover, the cases cited by the trial court, and relied upon by Ridlon on appeal for the proposition that claims involving statutory penalties above the constitutional limit obligate a trial by jury, do not address the applicability of the jury trial right under the State Constitution to what we have described as "purely statutory" causes of action. See Pomponio v. State, 106 N.H. 273, 274 (1965). When assessing the right to a jury trial in such circumstances, we have explained that we must "consider the comprehensive nature of the statutory framework to determine whether the jury trial right extends to the action." Hair Excitement, 158 N.H. at 368 (quotation omitted). State securities laws, commonly referred to as "Blue Sky Laws," are designed to prevent fraud and protect the public. 79A C.J.S. Securities Regulation § 482, at 534-36 (2009). They seek to create "a balanced regulatory scheme to cope with the problems of modern securities markets" in a given state. Id. at 534. "The first legislative attempts to regulate securities transactions were effected on the state level, with the first general securities law being said to have been enacted by the State of Kansas in 1911, and with 48 jurisdictions having enacted such statutes by 1933." Brenner v. Oppenheimer & Co. Inc., 44 P.3d 364, 371 (Kan. 2002) (quotation omitted). New Hampshire enacted its first blue sky law in 1917. See Laws 1917, ch. 202. In its original form, the statute made violations of its terms "punishable upon conviction . . . by a fine of not more than two thousand dollars, or by imprisonment for not more than six months, or by both such fine and imprisonment," and also provided that "such false or misleading statements or information so furnished shall be evidence in court . . . in a suit to recover damages on account of loss sustained . . . ." Laws 1917, ch. 202, at 762-63. The statute was amended in 1981 to include a provision that gave the attorney general the authority to seek "civil penalties for violations of" the statute. See Laws 1981, ch. 214, at 214. The amendments further granted the commissioner of insurance the authority to impose an administrative fine of not more than $2,500 for knowing violations of "any rule or order" issued by the commissioner. Laws 1981, ch. 214, at 216.[2] In 2015, amendments to the statute as a whole created the current statutory scheme. See Laws 2015, 273:1.

In its current form, the Uniform Securities Act is comprised of 55 sections contained in seven separate articles. See RSA 421-B:1-101 to B:7-701

---

[2] At the time, the commissioner of insurance was charged with administering the statute. Laws 1981, ch. 214, at 213.

(2015) (amended 2017, 2018). The Act specifies detailed requirements for the registration of securities, see RSA 421-B:3-301 to -307, and those who sell them, see RSA 421-B:4-401 to -412. It charges the secretary of state with administering the Act, and confers upon the secretary "all powers specifically granted or reasonably implied in order to perform the substantive responsibilities imposed by this chapter," RSA 421-B:6-601(d), including the power to "bring administrative actions to enforce the securities law" and "investigate and impose penalties for violations of" said laws, RSA 421-B:6-601(b)(4)-(5). When the secretary of state believes provisions of the Act have been, or are about to be, violated, the secretary may bring an administrative enforcement action under RSA 421-B:6-604. See RSA 421-B:6-604. The hearings procedures at the administrative level are governed by RSA 421-B:6-613. See RSA 421-B:6-613(a). These "[a]dministrative hearings shall not be bound by common law or statutory rules of evidence, nor by technical or formal rules of procedure," and "[a]ll relevant, material, and reliable evidence shall be admissible." RSA 421-B:6-613(u). Following a hearing, the presiding officer "shall issue a written decision stating the action to be taken by the department," which "shall be reached upon the basis of a preponderance of the evidence." RSA 421-B:6-613(v). The actions may include the imposition of "a civil penalty up to a maximum of $2,500 for a single violation," RSA 421-B:6-604(d), as well as "an order of rescission, restitution, or disgorgement," RSA 421-B:6-604(e). All "[f]inal orders issued by the secretary of state under this chapter are subject to judicial review in accordance with RSA 541," RSA 421-B:6-609, meaning that upon satisfying the statutory rehearing procedures, an aggrieved party may appeal directly to this court, see RSA 541:6 (2007).

As the above recitation demonstrates, the statutory procedures established by the legislature for the regulation of securities "militate[ ] against any implication of a trial by jury." Hallahan, 94 N.H. at 340. The rights and obligations that govern "depend entirely upon the statute." Pomponio, 106 N.H. at 274. They are comprehensive in their scope, see Hair Excitement, 158 N.H. at 368, and "designed to facilitate a simple and speedy determination" of the claims brought by the secretary, Hallahan, 94 N.H. at 340; see, e.g., RSA 421-B:6-613(o) (outlining informal conference procedures intended to simplify the issues, reach agreements or stipulations which "avoid unnecessary proof," and consider "[a]ny other matters which might contribute to the prompt, orderly, and fair conduct of the proceeding"). Thus, even if we were to assume, as Ridlon posits, that the types of relief that may be sought by the secretary under the statute — i.e., civil penalties, fines, restitution, and disgorgement (all of which remedies the statute describes as "penalties," see RSA 421-B:6-601(b)(5), :6-604(d)-(e)) — bear certain similarities to a common law claim in debt as to which a right to trial by jury would have existed in 1784, see Tull, 481 U.S. at 420, consideration of the overall statutory scheme fashioned by the Securities Act persuades us that the administrative enforcement mechanism it created was unknown to the common law in 1784 and is not compatible with trial by jury.

The trial court acknowledged our precedents as cited above, but reasoned that they were not controlling because, in its view: (1) Part I, Article 20 applies differently when the State seeks to recover a penalty from a private party; and (2) the action against Ridlon is akin to common law fraud. With respect to the first point, it is true that there are certain circumstances in which the State is treated differently from a private party when it comes to the availability of a jury trial under Part I, Article 20. For example, the constitutional right to a jury trial is not available to the State at all, whether it be a plaintiff or defendant in litigation. See Wooster v. Plymouth, 62 N.H. 193, 201 (1882). We have also explained that there is "no right under article 20 to a trial by jury in an action [brought] against the State." Newell v. N.H. Div. of Welfare, 131 N.H. 88, 90 (1988) (emphasis added). But the differential treatment described in Newell stems from the "established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission," and where it does waive this privilege, "it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted." Wooster, 62 N.H. at 204; see 47 Am. Jur. 2d Jury § 43, at 661-62. However, our case law offers no support for the view that a person's right to a jury trial enjoys an enhanced status when it is the State, rather than a private party, that brings the claim.[3] The authorities relied upon by the trial court in so holding are readily distinguishable from the case at hand.

For example, in Morrill we were asked to determine whether the sanctions, including a fine of up to $1,000, "attached to [driving while intoxicated, first offense] take it outside the realm of petty offenses not requiring trial by jury" under Part I, Article 15. Morrill, 123 N.H. at 712 (quotation and brackets omitted). We held that they did, explaining "that the framers of our constitution did not intend that individual criminal defendants be denied a jury trial in cases where fines may be levied which are greater than the amount constitutionally entitling civil litigants to a jury determination." Id. (emphasis added). In our view, it was illogical to believe that a civil litigant would be entitled to a jury trial pursuant to Part I, Article 20 when the amount in controversy exceeded $500,[4] but a criminal litigant would not be afforded

---

[3] Ridlon attempts to distinguish this case from Hair Excitement on the basis that that case dealt with a statutory claim (under the Consumer Protection Act) made by a private party as plaintiff, whereas this case involves a statutory claim (under the Securities Act) brought by the State against a private party as defendant. The distinction is unavailing, however, because our Article 20 cases have never suggested either that the right to a jury trial, where it exists, is not equally available whether the party claiming it is a plaintiff or a defendant, or that the jury right enjoys some special status when the claim at issue is brought against a private party by an agency of government. Thus, in determining whether a constitutional right to a jury trial is available to a private party, the fact that such party's opponent in the litigation is the State, as in this case, as opposed to a private party, as in Hair Excitement, is immaterial.

[4] In 1988, Part I, Article 20 of the State Constitution was amended to increase the threshold beyond which a jury trial was required from $500 to $1,500. See Gilman v. Lake Sunapee Props., 159 N.H. 26, 30 (2009) (providing a brief outline of Article 20's history).

that same right when "<u>charged with offenses under our penal code</u>."  <u>Id</u>. at 713 (emphasis added).  Thus, although the offense at issue in <u>Morrill</u> was classified as a violation, which does not constitute a crime, <u>see</u> RSA 625:9, II(b) (2016), our analysis referenced Part I, Article 20, not because it was substantively applicable to the case, but merely for comparison purposes, in determining whether the fine called for by the statute was sufficiently severe to confer the right to a jury trial applicable to criminal cases under Part I, Article 15.

Nor does our decision in <u>Town of Henniker v. Homo</u>, 136 N.H. 88 (1992), compel a different conclusion.  There, the defendants were fined by the superior court "for maintaining a junk yard on their property without a license, in violation of RSA 236:114 and the Henniker Zoning Ordinance."  <u>Town of Henniker</u>, 136 N.H. at 88.  Based on the language of the relevant statutes, we concluded that the defendants had committed a separate violation on each day they continued to operate the junk yard without a license, resulting in 606 separate violations.  <u>See</u> <u>id</u>. at 89-90.  We assumed, <u>without deciding</u>, that the defendants would be constitutionally entitled to a jury trial if the maximum fine per violation exceeded the threshold of Part I, Article 20.  <u>See</u> <u>id</u>. at 89.  Because the ordinance limited the maximum fine per violation to $100, we held that the defendants did not have a right to a jury trial on any of their violations, <u>id</u>. at 90, even though the superior court "imposed fines which <u>totalled</u> in excess of the amount that constitutionally entitles civil litigants to a jury trial," <u>id</u>. at 89 (emphasis added).  Consequently, neither <u>Morrill</u> nor <u>Town of Henniker</u> stand for the proposition that the State Constitution affords the right to a jury trial to a person facing a governmental action to collect a civil penalty that exceeds the $1,500 threshold specified in the current version of Part I, Article 20.[5]

Likewise, we disagree with Ridlon's argument, as well as the trial court's conclusion, that the statutory claim against him can be considered equivalent to a common law cause of action for fraud.  In <u>Hair Excitement</u>, we compared a statutory claim brought under the Consumer Protection Act with a common law claim for fraud or deceit.  <u>See</u> <u>Hair Excitement</u>, 158 N.H. at 369-70.  After comparing the elements and proofs of the two claims, we concluded that the two actions were dissimilar.  <u>Id</u>.  Here also, the secretary's action against Ridlon is dissimilar to common law fraud in significant respects.  To start, the Act specifically states in its definitional section that the terms "'[f]raud,' 'deceit,' and 'defraud' are not limited to common law deceit."  RSA 421-B:1-102(17).  Thus, the Act is designed to encompass a broader class of claims than the common law tort.

---

[5] Ridlon's reliance on <u>State v. Jackson</u>, 69 N.H. 511 (1899), and <u>East Kingston v. Towle</u>, 48 N.H. 57 (1868), to support the trial court's decision is similarly unavailing.  <u>Jackson</u> expressly dealt with the right to a jury trial under Part I, Article 15, <u>see</u> <u>Jackson</u>, 69 N.H. at 512, and <u>Towle</u> dealt with "the right of trial in all controversies relating to property" under Part I, Article 20, <u>see</u> <u>Towle</u>, 48 N.H. at 63.

Furthermore, the claims brought against Ridlon are readily distinguishable from a common law action for fraud or deceit. The claims are brought by the secretary to enforce compliance with the statute, see RSA 421-B:6-604(a), in response to financial injuries sustained by third-party clients of Ridlon. The secretary alleges that Ridlon violated RSA 421-B:5-502(a), which provides:

> It is unlawful for any person that advises others for compensation, either directly or indirectly or through publications or writings, as to the value of securities or the advisability of investing in, purchasing, or selling securities or that, for compensation and as part of a regular business, issues or promulgates analyses or reports relating to securities:
>
> > (1) to employ a device, scheme, or artifice to defraud another person; or
> >
> > (2) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

RSA 421-B:5-502(a). Therefore, the Act first requires that the offending party be a "person that advises others for compensation," and that the conduct specifically relate to the purchase and sale of securities. Id. It must then be established that the party employed "a device, scheme, or artifice," or engaged "in an act, practice, or course of business" designed to defraud another. RSA 421-B:5-502(a)(1) to (2). The above requirements must be established by a preponderance of the evidence. RSA 421-B:6-613(v).

By contrast, in order to prove common law fraud or deceit, a plaintiff must prove that a defendant intentionally made materially false statements to the plaintiff, which the defendant knew to be false or which he had no knowledge or belief to be true, for the purpose of causing, and which did cause, the plaintiff reasonably to rely to his detriment. See Hair Excitement, 158 N.H. at 369. Thus, in a common law fraud action, the party bringing the claim must establish that it was personally harmed by the defendant's conduct, prove justifiable reliance, and "specifically allege the essential details of the fraud and the facts of the defendants' fraudulent conduct." Snierson v. Scruton, 145 N.H. 73, 77 (2000). In addition, to prevail, the plaintiff must meet the more demanding burden of proving fraud by clear and convincing evidence. Snow v. American Morgan Horse Assoc., 141 N.H. 467, 468 (1996). In short, like the Consumer Protection Act claim at issue in Hair Excitement, the administrative[6]

---

[6] We note that the Securities Act appears to permit the attorney general or the secretary of state to forgo administrative enforcement and instead initiate enforcement proceedings directly in superior court. See RSA 421-B:6-603. We have no occasion to consider in this case whether a person

proceeding brought against Ridlon by the secretary under the Securities Act is not analogous to common law fraud or deceit because it "require[s] proof of significantly different elements and satisfaction of a different standard of proof." Hair Excitement, 158 N.H. at 370. Accordingly, Ridlon is not entitled to a jury trial under Part I, Article 20 of the State Constitution.

We do not share the dissent's view that the comprehensiveness analysis outlined in Hallahan pertained only to whether there existed an implied statutory right to a jury trial, rather than one under the State Constitution. Although we acknowledge that Hallahan does not specifically indicate which portions of the analysis pertained to the constitutional interpretation as opposed to the statutory interpretation, we disagree with the dissent's assertion that the discussion of the comprehensiveness of the statutory scheme in Hallahan applied only to the court's statutory analysis. In fact, later cases have referenced and applied the framework outlined in Hallahan in the constitutional context. See Hair Excitement, 158 N.H. at 368-69; Franklin Lodge, 149 N.H. at 591.

Furthermore, although we agree with the dissent as to the importance of the jury trial right, we are bound by the law as set forth in our past cases. See Ford v. N.H. Dep't of Transp., 163 N.H. 284, 290 (2012) (discussing the doctrine of stare decisis). Yet, if we were to adopt the dissent's rationale, we would be hard pressed to understand how Hair Excitement would remain good law. In this regard, we note that one of the remedies provided for in the Consumer Protection Act is an award of $1,000 per violation, which can be multiplied by up to three times by the court if it determines that the defendant's conduct was a willful or knowing violation of the Act. See RSA 358-A:10, I (2009); Simpson v. Young, 153 N.H. 471, 474-75 (2006). Given that this recovery is allowed whether a plaintiff suffered actual damages or not, it seems that this remedy could easily be characterized as a "civil penalty" and thus subject to a jury trial under the dissent's view. Such a ruling would effectively overrule Hair Excitement or, at a minimum, cast constitutional doubt on its continued validity.

For the reasons stated above, we reverse the judgment of the trial court.

Reversed.

HICKS and BASSETT, JJ., concurred; HANTZ MARCONI, J., with whom DONOVAN, J., joined, dissented.

HANTZ MARCONI, J., with whom DONOVAN, J., joins, dissenting. We respectfully dissent because we believe that Ridlon is entitled to a jury trial

---

against whom an enforcement proceeding is commenced in superior court enjoys a right to a jury trial.

under Part I, Article 20 of the New Hampshire Constitution.  See N.H. CONST. pt. I, art. 20.  The State of New Hampshire, acting through the Bureau of Securities Regulation, seeks millions of dollars in civil penalties against Ridlon for alleged violations of the New Hampshire Uniform Securities Act (Act).  See RSA ch. 421-B (2015) (amended 2017, 2018).  Because the Bureau is seeking civil penalties in excess of $1,500 per violation in this action in debt, Ridlon has a right to a jury trial under Part I, Article 20.  See Tull v. United States, 481 U.S. 412, 418-19 (1987) (concluding, based on historical analysis, that "[a]ctions by the Government to recover civil penalties under statutory provisions" are "one type of action in debt" that required a jury trial at common law); N.H. CONST. pt. I, art. 20 (requiring "the value in controversy" to exceed $1,500).  The Act's failure to provide for a jury trial under such circumstances contravenes the protections afforded by our State Constitution.  Therefore, we respectfully dissent from the majority opinion.

I

The Bureau instituted an administrative enforcement action against Ridlon in 2017 for conduct spanning 2007 to 2016.  See RSA 421-B:6-604 (governing administrative enforcement proceedings).  Among other relief, the Bureau sought civil penalties under RSA 421-B:6-604(d), which authorizes the secretary of state to "impose a civil penalty up to a maximum of $2,500 for a single violation" in its final order.  The Act currently limits judicial review of administrative enforcement actions to appeals of final orders taken to this court, governed by the procedures in RSA chapter 541.  See RSA 421-B:6-609; RSA 541:6 (2007).  The predecessor to the current Act provided for a de novo appeal to superior court when the secretary of state ordered certain kinds of relief, but the legislature repealed this provision in 2009.[7]  Compare Laws 1994, 388:22 (enacting de novo appeal provision), with Laws 2009, 128:3 (repealing de novo appeal provision).

The majority focuses on whether a jury trial must be provided in an administrative enforcement action in the first instance, i.e., in the administrative proceeding itself.  This focus heavily influences its conclusion that Ridlon has no constitutional right to a jury trial.  We view the pertinent inquiry differently.  The relevant New Hampshire authority suggests that the legislature can require claims for which there is a constitutional right to a jury trial to first be adjudicated by an administrative agency, so long as there is a reasonably unfettered right of appeal to a court where a jury trial can be held.  ICS Communications v. Fitch, 145 N.H. 433, 434-35 (2000); see also Opinion of the Justices, 113 N.H. 205, 214 (1973); Copp v. Henniker, 55 N.H. 179, 202-03 (1875); cf. Opinion of the Justices (DWI Jury Trials), 135 N.H. 538, 541-42 (1992) (explaining that Part I, Article 15 of the State Constitution guarantees

---

[7] We did not have occasion to consider whether the de novo appeal provision required a trial by jury as a matter of statutory interpretation or constitutional law.

the right to a jury trial, either in the first instance or on appeal to the superior court, to all criminal defendants facing the possibility of incarceration).

Acknowledging this authority, Ridlon concedes that if the Act allowed the aggrieved party to appeal the secretary of state's final order in the administrative action to the superior court for a de novo jury trial, "there would be no constitutional problem" under Part I, Article 20.  The Act currently contains no such provision, however.  See RSA ch. 421-B.  Therefore, the question we must answer is this: when the government seeks civil penalties in excess of $1,500 per violation in an administrative enforcement action, does the Act's failure to provide an appeal to a court where a jury trial can be held contravene Part I, Article 20?  As explained below, we believe that it does.

II

The jury trial "has been steadily regarded, from the earliest judicial history in England, as the great safeguard of the lives, liberty, and property of the subject against the abuses of arbitrary power, as well as against undue excitements of popular feeling."  Wooster v. Plymouth, 62 N.H. 193, 194 (1882) (quotation omitted).  Indeed, "the jury is a cornerstone of our democratic system of government."  State v. Elbert, 121 N.H. 43, 44 (1981); see also Pena-Rodriguez v. Colorado, 137 S. Ct. 855, 860 (2017).  The founders of this country viewed the right to trial by jury and the right to vote as "the heart and lungs, the main spring, and the center wheel" of our liberties.  Letter from John Adams to William Pym (Jan. 27, 1766), in 1 Papers of John Adams 164, 169 (Robert J. Taylor et al. eds., 1977).

The constitutional right to trial by jury is "not a protection of the government, but a protection of the subject against the government, and of the weak subject against the powerful subject."  Wooster, 62 N.H. at 201 (emphasis added); see also East Kingston v. Towle, 48 N.H. 57, 64 (1868) (noting that "trial by jury [is] secured to the subject by the constitution" (emphasis added)).  Our State Constitution guards this right "against repeal, infringement, or undue trammel by legislative action."  Gilman v. Lake Sunapee Props., 159 N.H. 26, 31 (2009) (quotation omitted); accord Hair Excitement v. L'Oreal U.S.A., 158 N.H. 363, 368 (2009).

The right to a jury trial is enshrined in several places in the New Hampshire Constitution's Bill of Rights.  See N.H. CONST. pt. I, arts. 15, 16, 20; see also Wooster, 62 N.H. at 196, 202-03.  The right to a jury trial in civil causes is guaranteed by Part I, Article 20, which provides:

> In all controversies concerning property, and in all suits between 2 or more persons except those in which another practice is and has been customary and except those in which the value in controversy does not exceed $1,500 and no title to real estate is involved, the

parties have a right to a trial by jury. This method of procedure shall be held sacred unless, in cases arising on the high seas and in cases relating to mariners' wages, the legislature shall think it necessary to alter it.

N.H. CONST. pt. I, art. 20. "In those civil cases in which trial by jury is a constitutional right, that right is as sacred as it is in criminal cases. Its sacredness is not a matter of degree: it is absolute." Copp, 55 N.H. at 195. Further, our precedent "indicate[s] a strong tendency to uphold the right of trial by jury whenever possible." Hampton v. Palmer, 99 N.H. 143, 146 (1954).

In Part I, Article 20, the people of New Hampshire "reserved to themselves the right of jury trial, except in cases in which it has been heretofore otherwise used and practiced." Daley v. Kennett, 75 N.H. 536, 537 (1910) (quotation omitted); see State v. Saunders, 66 N.H. 39, 72 (1889) (explaining that "'heretofore' means before 1784" in the context of Part I, Article 20).[8] This constitutional provision "was a recognition of an existing right, guaranteeing it as it then stood and was practised"; it did not extend the right to trial by jury to cases that "had not before been within its benefits." Davis v. Dyer, 62 N.H. 231, 235 (1882).

"To resolve whether a party has a right to trial by jury in a particular action, we generally look to both the nature of the case and the relief sought, and ascertain whether the customary practice included a trial by jury before 1784." Gilman, 159 N.H. at 30-31 (quotation omitted); accord Hair Excitement, 158 N.H. at 368; Employers Assurance Co. v. Tibbetts, 96 N.H. 296, 298 (1950). "[T]he cases in which it had been otherwise used and practised are shown by common-law principles and by history." Wooster, 62 N.H. at 203 (citations omitted); accord Daley, 75 N.H. at 537. "Our analysis, therefore, requires a historical discussion." Gilman, 159 N.H. at 31; see also HSBC Bank USA v. MacMillan, 160 N.H. 375, 377 (2010); In re Sandra H., 150 N.H. 634, 636 (2004). We must be "extremely cautious in asserting, without the most thorough and critical examination, that a party in any case was not entitled to trial by jury before the adoption of the constitution." Copp, 55 N.H. at 190.

In conducting the historical inquiry under Part I, Article 20, we also consider Part II, Article 90 of the State Constitution. See Saunders, 66 N.H. at 75-76. Enacted in 1784, Part II, Article 90 provides in relevant part:

---

[8] Until 1988, Part I, Article 20 described the exception as applying to "'cases in which it has been heretofore otherwise used and practiced.'" Gilman, 159 N.H. at 29-30 (quoting Laws 1788 at 12). In 1988, that language was changed to "those [cases] in which another practice is and has been customary." N.H. CONST. pt. I, art. 20; see Gilman, 159 N.H. at 29-30. The meaning of the exception, however, has not changed. See Gilman, 159 N.H. at 30.

12

> All the laws which have heretofore been adopted, used, and approved, in the province, colony, or state of New Hampshire, and usually practiced on in the courts of law, <u>shall remain and be in full force</u>, until altered and repealed by the legislature; such parts thereof only excepted, as are repugnant to the rights and liberties contained in this constitution . . . .

N.H. CONST. pt. II, art. 90 (emphasis added). As used in Article 90, "'heretofore' means before 1784." <u>Saunders</u>, 66 N.H. at 72.

"The English common law, modified by American conditions, is one of the laws which have heretofore been adopted, used, and approved in the province of New Hampshire and usually practised on in the courts." <u>Id</u>. at 73 (quotation and ellipsis omitted). This body of common law continued "in force here upon the organization of the provincial government" in the 1600s, <u>State v. Albee</u>, 61 N.H. 423, 426-27 (1881), and remained in effect after 1784 by virtue of Part II, Article 90 so long as it was not "repugnant to the rights and liberties contained in [our] constitution," N.H. CONST. pt. II, art. 90; <u>see</u> <u>State v. Santamaria</u>, 169 N.H. 722, 724-25 (2017). The historical discussion in this case therefore begins with English common law.

"Jury trial was an established right of British subjects long before the earliest settlement of this state." <u>Wooster</u>, 62 N.H. at 194 (quotation omitted).

> In our own country, almost from its earliest settlement, the trial by jury was claimed by the people as the birthright of Englishmen, and as the most valuable of the rights of freemen; and in the great struggle which secured our national independence, no right of the colonists was more urgently and strenuously insisted upon.

<u>Opinion of Justices</u>, 41 N.H. 550, 550-51 (1860); <u>accord</u> <u>Wooster</u>, 62 N.H. at 194. Indeed, the colonists were "full of the English passion for trial by jury, intensified, if possible, by their experience in this country." <u>Gilman</u>, 159 N.H. at 31 (quotation omitted); <u>accord</u> <u>Copp</u>, 55 N.H. at 187.

"At common law, suits for civil penalties were tried as actions for debt, and actions for debt were triable before a jury." <u>State v. Credit Bureau of Laredo, Inc.</u>, 530 S.W.2d 288, 292 (Tex. 1975); <u>see also</u> <u>Grossblatt v. Wright</u>, 239 P.2d 19, 26 (Cal. Dist. Ct. App. 1951) (noting that "[a] jury trial was a matter of right in the common-law action of debt"); <u>cf</u>. <u>Woart v. Winnick</u>, 3 N.H. 473, 481 (1826) ("[A]n action of debt to recover a penalty is a civil cause."). As relevant here, "[a]ctions by the Government to recover civil penalties under statutory provisions . . . historically have been viewed as one type of action in debt requiring trial by jury." <u>Tull</u>, 481 U.S. at 418-19.[9] Thus, the available

---

[9] While we agree with the majority that this court must be circumspect in relying on case law that

13

historical evidence supports Ridlon's position that the Bureau's action to recover civil penalties against him pursuant to the Act renders this an action in debt, for which there was a right to a jury trial at common law.

The common law right to a jury trial continued in force in New Hampshire through and after 1784 via Part II, Article 90, as part of the existing body of laws. See Saunders, 66 N.H. at 75-76. Unlike other areas of common law, however, this right was withheld from the legislative power of alteration and repeal by the jury trial provisions in the State Constitution's Bill of Rights. See id. Therefore, the law concerning the right to trial by jury for actions in debt, "brought to this country by the first settlers, is in force so far as it had not been altered by usage or legislation before 1784." Id. at 75.

The Bureau has not identified any authority that suggests the common law right to a jury trial for actions in debt changed prior to the adoption of the New Hampshire Constitution. See Nationwide Biweekly Admin., Inc. v. Superior Court, 234 Cal. Rptr. 3d 468, 479 (Ct. App.), review granted, 426 P.3d 302 (Cal. 2018); Gallo v. Traina, 166 N.H. 737, 740 (2014) (appealing party has the burden of demonstrating reversible error). Additionally, the available historical evidence indicates that, both before and after 1784, English common law treated civil penalty suits as actions in debt that required trial by jury. See Tull, 481 U.S. at 418. Given the importance of the jury trial right in the founding of this country, it is fair to say that "[m]en who had enjoyed [the right to trial by jury for actions in debt] under the British crown would not be likely to surrender it after engaging in an exhaustive war for seven years to establish their independence." Albee, 61 N.H. at 427-28. Indeed, "the right of trial by jury was held in such esteem by the colonists that its deprivation at the hands of the English was one of the important grievances leading to the break with England." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 340 (1979) (Rehnquist, J., dissenting). Accordingly, we conclude that the nature of the case here — an action in debt by the government for civil penalties pursuant to a statute — supports the existence of a right to trial by jury under Part I, Article 20. See Gilman, 159 N.H. at 30-31.

The nature of the relief requested — specifically, the civil penalties sought under RSA 421-B:6-604(d) — further supports the existence of a right to a jury trial under Part I, Article 20. See id. A "civil penalty" is "[a] fine assessed for a violation of a statute or regulation." Black's Law Dictionary 1313 (10th ed. 2014); see also Ellett Bros., Inc. v. U.S. Fidelity & Guar. Co., 275 F.3d 384, 388 (4th Cir. 2001) (stating that "civil penalties" are "fines or

---

interprets the Seventh Amendment to the United States Constitution, reliance on decisions from federal and other state courts with respect to matters of historical fact is entirely appropriate. See, e.g., Nationwide Biweekly Admin., Inc. v. Superior Court, 234 Cal. Rptr. 3d 468, 479-80 (Ct. App.), review granted, 426 P.3d 302 (Cal. 2018). Indeed, "Tull's discussion of the historical legal facts establishing the types of actions triable by jury at common law is highly pertinent to the instant case." Id. at 479.

assessments payable to the government"). "A civil penalty was a type of remedy at common law that could only be enforced in courts of law." Tull, 481 U.S. at 422. Thus, the nature of the relief authorized by the civil penalty provision of RSA 421-B:6-604 "was traditionally available only in a court of law." Id. at 423; see RSA 421-B:6-604(d) (authorizing the secretary of state to "impose a civil penalty up to a maximum of $2,500 for a single violation" of the Act). "[C]ourts of common law . . . proceed to the trial of contested facts by means of a jury." Saunders, 66 N.H. at 76 (quotation omitted). Consequently, "a government action seeking civil penalties" such as those contained in RSA 421-B:6-604(d) "is the kind of case that, under the historic English common law, would have been tried in the courts of law and as to which" Ridlon has a right to a jury trial. Nationwide Biweekly Admin., 234 Cal. Rptr. 3d at 480-81.

The final consideration is whether the amount in controversy exceeds the $1,500 threshold of Part I, Article 20. See N.H. CONST. pt. I, art. 20. The Act provides that "the secretary of state may impose a civil penalty up to a maximum of $2,500 for a single violation" in an administrative enforcement action. RSA 421-B:6-604(d). Because the maximum penalty per violation exceeds $1,500, the amount in controversy requirement is met. Cf. Town of Henniker v. Homo, 136 N.H. 88, 89-90 (1992) (assuming that state constitutional right to jury trial applied to zoning enforcement action seeking civil fines in superior court, amount in controversy requirement was not met where zoning ordinance limited maximum fine to $100 per violation).

In conclusion, because the government, i.e., the Bureau, seeks civil penalties pursuant to statute in excess of $1,500 per violation, both the nature of the case and the nature of the relief sought support the conclusion that Ridlon has a right to a jury trial under Part I, Article 20 of the New Hampshire Constitution. Because the Act does not provide an avenue of appeal to a court where the jury trial right can be exercised, the administrative enforcement proceeding seeking civil penalties against Ridlon violates Part I, Article 20.

III

Instead of addressing whether the administrative enforcement action constitutes an action in debt, the majority rests its analysis upon the premise that the comprehensiveness of the statutory scheme determines the existence and scope of the constitutional right to trial by jury under Part I, Article 20. A careful review of our case law demonstrates that the reference to statutes' comprehensive nature originated in dicta in Franklin Lodge of Elks v. Marcoux, 149 N.H. 581, 591 (2003), and resurfaced in Hair Excitement, 158 N.H. at 368. Our vast body of Part I, Article 20 jurisprudence demonstrates that these statements in Franklin Lodge and Hair Excitement were isolated departures from our well-settled constitutional inquiry, under which we consider "whether the controversy was one that was resolved by a jury at the time of the constitution's adoption" in 1784. Gilman, 159 N.H. at 30. Accordingly, unlike

15

our colleagues, we believe that the comprehensive nature of the Act does not determine whether Ridlon has a constitutional right to a civil jury trial in this matter.

For at least a century, we have consistently described the pertinent inquiry under Part I, Article 20 in language referencing the nature of the case and the nature of the relief sought. See, e.g., Daley, 75 N.H. at 540; Employers Assurance, 96 N.H. at 298; Palmer, 99 N.H. at 145; Gilman, 159 N.H. at 30-31. In Daley, for example, we stated: "The nature of the case and of the relief sought must be looked to for the settlement of the constitutional question." Daley, 75 N.H. at 540. We have also maintained that "[t]he extent of the right to trial by jury is settled by ascertaining how it was used and practiced before 1784." Hallahan v. Riley, 94 N.H. 338, 339 (1947) (quotations omitted); accord Douglas v. Company, 81 N.H. 371, 374 (1924).

Prior to 2003, we had never indicated that the comprehensive nature of a statutory scheme had any bearing on the constitutional question of whether there was a right to a jury trial under Part I, Article 20. See Franklin Lodge, 149 N.H. at 591-92. Indeed, in Hallahan, we resolved the constitutional issue by relying on the rule that "a guaranty of trial by jury cannot be invoked in special, statutory or summary proceedings unknown to the common law." Hallahan, 94 N.H. at 339-40.

We also examined in Hallahan whether a statutory right to trial by jury "c[ould] be fairly implied" from the provision that governed appeals to the superior court from the "Appeal Tribunal of the [Bureau of Labor's] Unemployment Compensation Division." Id.; see id. at 339 ("Since the statute does not expressly provide for trial by jury, plaintiffs can prevail only if it can be fairly implied or it is required by virtue of the state constitution." (emphasis added)). In conducting the statutory analysis, we observed that "[t]he procedure for filing and obtaining unemployment compensation benefits is comprehensive and designed to facilitate a simple and speedy determination of benefit claims." Id. at 340. We concluded that the "elaborate procedure for administrative and judicial review provided by the statute militates against any implication of a trial by jury," and thus, as a matter of statutory interpretation, "the appellants [were] not entitled to a trial by jury" in their appeal to the superior court. Id. Our use of the phrase "implication of a trial by jury," id. (emphasis added), signaled that this sentence concerned our analysis of whether a jury trial "c[ould] be fairly implied" from the statute, not whether it was "required by virtue of the state constitution," id. at 339 (emphasis added).

More than fifty years after we decided Hallahan, we relied on the statutory portion of our analysis in that case to support a new proposition regarding the constitutional right to a jury trial:

When a plaintiff seeks relief for breach of codified rights, we further consider the comprehensive nature of the statutory framework to determine whether the jury trial right extends to the action. See Hallahan v. Riley, 94 N.H. 338, 340 (1947) (elaborate procedure for administrative and judicial review provided by unemployment compensation statute militates against any implication of a trial by jury).

Franklin Lodge, 149 N.H. at 591. We did not explain why the constitutional right to a jury trial should depend on whether the statutory scheme at issue is comprehensive. See id. at 591-92. More importantly, however, the foregoing statement in Franklin Lodge is dicta because we did not analyze the merits of the appellant's argument that it had a right to trial by jury under Part I, Article 20. See id.; see, e.g., In re Search Warrant for Records of AT&T, 170 N.H. 111, 115 (2017) (holding that certain language in a prior case was "dicta" and, therefore, "not controlling" because those "comments were unnecessary to the decision"); State v. Burris, 170 N.H. 802, 810-11 (2018). Instead we stated that the appellant had failed to address aspects of our state constitutional inquiry, and "[w]ithout adequate appellate argument, we decline[d] to address the [appellant]'s argument any further." Franklin Lodge, 149 N.H. at 592. Therefore, Franklin Lodge is not binding precedent on the issue before this court. See, e.g., AT&T, 170 N.H. at 115.

Although we repeated the aforementioned dicta in Hair Excitement and observed that the statutory scheme at issue was "comprehensive," Hair Excitement, 158 N.H. at 368 (quotation omitted), our holding did not appear to turn on that observation, see id. Accordingly, these statements in Hair Excitement can also be classified as dicta. See, e.g., Arcam Pharmaceutical Corp. v. Faria, 513 F.3d 1, 3 (1st Cir. 2007) ("Dictum is superfluous content — 'an assertion in a court's opinion of a proposition of law which does not explain why the court's judgment goes in favor of the winner.'" (quoting Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1256 (2006))).

The doctrine of stare decisis does not compel us to perpetuate dicta, see, e.g., AT&T, 170 N.H. at 115; Burris, 170 N.H. at 810-11, and we would decline to do so in this case. Indeed, "[i]t is a fundamental rule of that doctrine that a decision is not authority for what is said in the opinion but only for the points actually involved and actually decided." Childers v. Childers, 168 P.2d 218, 221 (Cal. Dist. Ct. App. 1946) (emphasis omitted). Thus, while the majority appears to view its decision as compelled by stare decisis, we disagree. In our view, the comprehensiveness of the Act is not a basis for concluding, as the majority does, that Ridlon has no right to a jury trial under the State Constitution.

We believe that the existence of the state constitutional right to trial by jury should be determined by relying on the well-settled legal principles established by our Part I, Article 20 jurisprudence.  The comprehensiveness of the statutory scheme is not germane to the considerations we have identified as relevant to our inquiry under Part I, Article 20.  By contrast, the nature of the case and the nature of the relief sought are relevant to whether the action would have been tried in a court of law, which had jury trials, or a court of equity, which did not, at the time of the State Constitution's adoption.  See Saunders, 66 N.H. at 76.  Thus, the nature of the case and the nature of the relief sought bear upon whether the customary practice in 1784 included a jury trial.  The comprehensive nature of the statutory framework sheds no such light on the inquiry of whether a right to trial by jury existed in 1784.  Accordingly, considering the comprehensive nature of the statutory scheme does not assist in "the settlement of the constitutional question."  Daley, 75 N.H. at 540.

Furthermore, elevating comprehensiveness to the forefront of the analysis, as the majority does here, suggests that the nature of the case and the nature of the relief sought are less important than the existence of a comprehensive statutory scheme, out of which the claim at issue arises.  In effect, this approach allows the legislature to "nullify the [c]onstitutional right of trial by jury by mere statutory enactments.  It is by such methods that courts lose their power to enforce the Bill of Rights."  Grossblatt, 239 P.2d at 27 (quotation omitted).  The legislature, however, "cannot, under pretence of regulating, injuriously limit or restrain" the constitutional right to a civil jury trial.  Copp, 55 N.H. at 194.  Indeed, "the constitutional guaranty of trial by jury puts a plain limitation upon legislative power."  Id. at 202.  "If trial by jury be regarded as in many cases expensive, inconvenient, and behind the intelligence of the age, that may show that the constitution requires amendment, but it cannot be amended by an act of the legislature or a decision of the court."[10]  Id. at 209.  "A constitutional right, inconvenient in the highest degree, is as sacred as the most convenient one."  Id. at 206.  "It is one of the rights not surrendered by the people when they formed themselves into a state, and by its reservation they exempted themselves from the authority of the government they created to abridge it."  State v. Almy, 67 N.H. 274, 280 (1892).

IV

In sum, we believe that Ridlon has a right to a jury trial under Part I, Article 20 of the New Hampshire Constitution because the Bureau is seeking

_____

[10] It is worth noting that, on multiple occasions, the citizens of New Hampshire have rejected amendments to Part I, Article 20 that would limit the scope of its protections by increasing the amount in controversy requirement.  See Lawrence Friedman, The New Hampshire State Constitution 88 (2d ed. 2015).  The voters did so in 1984, for example, "despite the argument made by proponents of the change that [the proposed increase to $5,000] was needed to reduce the growing backlog in superior court cases."  Id.

civil penalties in excess of $1,500 per violation of the New Hampshire Uniform Securities Act.  See RSA 421-B:6-604(d).  Therefore, the Act's failure to provide an avenue of appeal to a court where trial by jury can be held violates our State Constitution.

Given our conclusion, we need not address the Bureau's argument that the other forms of relief it sought constitute equitable remedies for which there is no right to trial by jury.  Cf. McElroy v. Gaffney, 129 N.H. 382, 386 (1987) (plurality opinion) (recognizing that there is no right to a jury trial under Part I, Article 20 in "purely equitable proceedings," but noting that the right is not lost where equitable and legal claims are joined in the same action).

We also do not reach the issue of whether the action "is in essence one for common law fraud."  However, we have misgivings about whether Hair Excitement comports with our state constitutional framework.  See Hair Excitement, 158 N.H. at 369-70 (holding that Consumer Protection Act claim brought in private action was not "analogous to" claim for common law fraud or deceit, based upon differences in elements and burdens of proof).  As a result, we believe that the majority's use of Hair Excitement as a template for addressing the fraud argument, while understandable, risks extending an analysis that is untethered from our established framework under Part I, Article 20.  In the discharge of our duty to construe and uphold the New Hampshire Constitution, this court must be vigilant in ensuring that questionable precedent "be not extended by mere analogy to a different case if the result will be to weaken or subvert" our constitutional principles.  Dimick v. Schiedt, 293 U.S. 474, 485 (1935).  While the issue must wait for another day, parties in future cases would be wise to address how our analysis of the fraud argument in Hair Excitement can be reconciled with the historical inquiry required under Part I, Article 20 of our State Constitution.

For all of the foregoing reasons, we respectfully dissent from the majority opinion.